LOUIS FRITZ v. THE DETROIT CITIZENS' STREET RAILWAY COMPANY.

*Street railways—Collision while attempting to cross track—Contributory negligence.*

1. In the absence of something to excuse the performance of that duty, it is incumbent upon the driver of a vehicle in a public street traversed by a street railway, before attempting to turn across the track, to take proper means of ascertaining whether or not the way is clear, and this is especially true where the attempt is made in the middle of a block, or at any place other than a regular crossing; citing *Watson v. Railway Co.*, 53 Minn. 551.

2. In a personal injury case it appeared that the plaintiff was driving a milk wagon alongside of and near to a street-railway track; that, when near a street crossing, he suddenly turned and attempted to cross the track, and the rear end of his wagon was struck by a motor car, which had been following him for some distance; that the motorman did not see in advance, nor until a very few seconds before the collision actually occurred, that the plaintiff was about to attempt to cross the track. And it is held that the rule that the fact of a precedent negligence of a plaintiff, resulting in producing a situation known to the defendant, who, after the discovery of such condition, may, by the exercise of care, avoid injury, is not a contributory cause to an injury thereafter produced by disregard of this discovered condition, is not applicable to the case.

Error to Wayne. (Lillibridge, J.) Argued February 15, 1895. Decided April 16, 1895.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinions.

*Keena & Lightner,* for appellant.

*Russel & Campbell* and *A. C. Angell,* for defendant.

MONTGOMERY, J. This is a case of collision. There was testimony tending to show that plaintiff was driving north on Woodward avenue in the city of Detroit, in a milk wagon. It was covered at the sides and behind. There was an opening of two feet wide opposite the driver's seat. In front there was an opening across the wagon about two feet in depth, between the dashboard and the hood. This and the openings at the sides were the only aperatures through which plaintiff could look out, as his back curtain was down. On the left side of the wagon he had 11 or 12 empty milk cans, each three or four feet high. He could not, on account of these cans, well look out of the left side of the wagon. Plaintiff was familiar with the locality. After turning onto Woodward avenue, he drove past Larned street, and to near the corner of. Woodward and Congress. There were three horse cars ahead of him on the Woodward-avenue line, going north, and on the opposite side of the street a Michigan-avenue car was going south. Plaintiff testified that when about 50 feet in the rear of the last horse car, and just before he got to the crossing on Congress street, he turned across the track, and when on the track the rear wheel of his wagon was struck by defendant's motor car. He testifies:

"I was watching my way ahead to get across, and was driving my horse at the usual gait. I did not see the car at all before the accident. I never noticed the car. I did not hear any gong rung. They always used to ring a bell at every crossing since they had electric cars. Some gongs rung very hard, but this one never rung, I don't think; either a little one or a big one. I heard nothing, and I think I would have heard the gong if it had been rung."

And on cross-examination he testified:

"Before I started to turn across the track, I did not look out of the side window to see if anything was coming from the south, because I did not notice any danger. I had to watch ahead. That is what I was looking for. I wanted to get across the track, and, if I had noticed anything, I would not have gone right ahead. * * * I listened to see if I could hear anything, and passed right across after the Michigan-avenue car was coming up the street. I didn't stop my horse after I turned from Jefferson. I cannot tell just how fast I had been coming up Woodward, but I was just trotting along at the usual gait, same as milk wagons usually go."

Joseph M. Kehoe, a member of the police force, testified that he noticed the milk wagon cross Woodward avenue; that the Michigan-avenue car slacked up, and the Woodward-avenue car, bound north, "came right along at a fair rate, and hit the milk wagon in the back, the back hub, and turned the wagon over." He also testifies that he thinks the motor car could have stopped before it got to the milk wagon. The defendant produced Phineas J. Tucker, who saw the accident from the street, and who testifies that his attention was called by the ringing of the gong, and that the wagon was about 15 feet ahead of the car when the wagon got fairly on the track. Orla B. Taylor testifies on behalf of the defendant that he was riding on the front seat of the car; that, when he first noticed the milk wagon, it was going north, right along the track, possibly eight or ten feet in front of the car, and on the east side of the east track; that the west wheel of the wagon was within an inch or two of the track, running very close to the rail, and possibly over upon the track; that, the wagon being in this position as they came up, the motorman sounded his gong; but that, as they came up to the south crossing of Congress street, the wagon turned suddenly to the west, being diagonally across the track; that, at the time it turned, the hind end of the wagon was not more than six or eight feet—ten feet at the outside—from

the front of the car; that the wagon had been going slowly, and the car was keeping right along behind the wagon; that the motorman began to turn the brake immediately after the wagon swung. He was corroborated in this by the conductor and the motorman. Upon this testimony the circuit judge directed a verdict for defendant, and the plaintiff brings error.

In determining whether the instruction of the circuit judge should be sustained, it will be well to recall briefly the general rules relating to the rights and duties of the respective parties. The driver of a vehicle in a public street traversed by a street railway is bound to take notice of the conditions. He knows that the street cars run in grooved tracks, and that it is therefore impossible for the driver or motorman to turn out to avoid collision with an object on the track; that the only means of avoiding collision is by stopping the car; and that this cannot be done instantly. It is therefore negligence for the driver of a carriage to suddenly turn directly in front of an approaching car, whether the car be coming from the direction in which he is driving or from the rear. We think it is also true that, in the absence of something to excuse the performance of that duty, it is incumbent upon the driver of such a vehicle, before attempting to turn across the track, to take proper means of ascertaining whether the way is clear, and this is especially true of an attempt to turn across the track in the middle of a block or at any place other than a regular crossing. See *Watson v. Railway Co.*, 53 Minn. 551. This the plaintiff failed to do in this case. Unless he had the right to assume that there was no car in the rear with which he was likely to come in contact, or unless he had the right to rely upon his failure to hear the sound of the gong, it was clearly negligent for him to turn across the track suddenly, and without assuring himself by proper investigation that no car was coming. Booth, St. Ry. § 315. In fact, until the car approached the crossing, it is very doubtful whether it

was the duty of the motorman to sound any gong. So long as the plaintiff was traveling in the same direction, and at such a gait as would not result in collision, it cannot be said that the motorman had any occasion to sound the gong, as he would have no reason to apprehend that the plaintiff would come to a stop or make a short turn across the track.

But it is said that there was testimony from which the jury might have inferred that the plaintiff's position was discovered in time to enable the defendant to avoid the collision. It is a rule recognized by repeated decisions of this Court, and maintained by text-writers, that the fact of a precedent negligence of plaintiff, resulting in producing a situation or a condition known to defendant, who, after the discovery of such condition, may, by the exercise of care, avoid injury, is not a contributory cause to an injury thereafter produced by disregard of this discovered condition. One of the earliest cases to lay down this rule is *Davies v. Mann*, 10 Mees. & W. 546. This rule is well stated in Bish. Non-cont. Law, § 466:

"It is sometimes very correctly said that, if one discovers another to have been negligent, he must take precautions accordingly, omitting which he is liable to the other for the damages which follow from his own want of care; for, however nearly related two separate negligences may be, the one cannot bar an action for the other unless it is contributory, and, though an unseen position might contribute to an accident, a discovered one cannot."

See, also, *Citizens' Street Railway Co. v. Steen*, 42 Ark. 321.

This rule has been applied by this Court in street-railway cases. See *Laethem v. Railway Co.*, 100 Mich. 297, and *Montgomery v. Railway Co.*, 103 Id. 46. In each of these cases the situation of plaintiff was such that it was apparent to the motorman that, if the car continued in its course, a collision would be inevitable, and this was

apparent to him for a considerable time before the collision. Do these cases necessarily rule the present? In this case it is apparent that the collision was of a sudden. The motorman did not see in advance that the plaintiff was about to cross the track, nor until a very few seconds before the collision actually occurred. It is not a case in which the plaintiff had been driving up the track, and was run down by the motorman, but an attempt to cross the track, unexpected and sudden. If we assume that, under these circumstances, the plaintiff had by this act placed himself in a position where his negligence might have been discovered and the car brought under control, it will result that, in every case where an attempt to cross ahead of a street car is made, the question of whether there was a timely discovery of the . situation will turn upon whether the motorman could have stopped his car after the attempt was made, and it would follow that, if he could, his negligence will authorize a recovery, notwithstanding the contributory negligence of plaintiff. With such a rule, there could no longer be any such thing as contributory negligence, defeating a recovery, in any case where the defendant's negligence consists of failing to control the car. We think the circumstances of this case are not such as to justify the application of the doctrine of *Davies v. Mann* and kindred cases, and that the plaintiff's negligent act must be held to have directly contributed to the injury. See *Railway Co. v. Chatterson* (Ky.), 29 S. W. Rep. 18; *Boerth v. Railroad Co.*, 87 Wis. 288.

Judgment affirmed.

LONG, GRANT, and HOOKER, JJ., concurred with MONTGOMERY, J.

McGRATH, C. J. (*dissenting*). Plaintiff, going north, undertook to cross the street upon which were cars in the immediate locality, going south. His view of the

rear was cut off by the construction of the vehicle upon which he was riding. He says that he listened and heard no gong, and that he thinks that he would have heard the gong had any been sounded. The witness Kehoe, a policeman, says that, at the time the wagon started to go across the avenue, no gong was sounded by the motorman; that he took particular notice of that, speaking to the conductor about it; and that "the motor car could have stopped before it got to the milk wagon; it had lots of time." The witness Taylor says that the motor struck the wagon north of the middle of Congress street; that at the south cross-walk of Congress street the wagon turned to the west; that he first observed the wagon about midway between Larned and Congress streets; and that at that time the west wheel of the wagon was within an inch or two of the track, running very close to the rail, and possibly over upon the track. Tucker says that, when the motor struck the wagon, it was not far from the middle of Congress street, but it would be nearer the north line of Congress. Taylor says the wagon was crossing Congress street diagonally. The motorman testified that when the wagon turned to cross the track, the wagon and car were 12 feet apart. The witness Tucker says that the wagon was 15 or 20 feet ahead of the car when the wagon got on the track. The court directed a verdict for the defendant, and we are bound by that view of the testimony which is most favorable to the plaintiff.

From the testimony given, if a jury had found that plaintiff was within the lines of Congress street when he undertook to make the crossing; that at that time the car was 20 feet behind the wagon; that for some distance prior to that time the wagon had been within a few inches of the track, as stated by the witness Taylor; that no gong was sounded until after plaintiff had turned in upon the tracks, and was in the act of crossing; that plaintiff was giving, and was necessarily giving, some attention to the south-bound cars; that the motorman,

had he kept his car under control, could have stopped the car before he struck the wagon,—no court would have been justified in setting aside the verdict. I concede that the driver of a vehicle in a public street traversed by a street railway is bound to take notice of the conditions. But this is not a one-sided obligation. Street-car companies are bound to recognize the rights of others to the use of the street, and, in approaching a vehicle upon the track, they are bound to take notice of the conditions that environ the driver of that vehicle. I cannot subscribe to the doctrine that a party entitled to use a public street is chargeable with knowledge, under all circumstances, of the approach of a car from the rear. A driver upon the track, or in close proximity to it, himself so circumscribed that he cannot see, is entitled to a warning before being run down. In the present case, according to the motorman's testimony, he had seen the wagon for some distance prior to the collision; and the witness Taylor says that during all that time the left wheels of the wagon were within an inch or two of the track, and possibly over upon the track. The danger was in no sense undiscovered. It was, in any event, the duty of the motorman to observe and to see the danger. The case should have gone to the jury.