BOETTCHER *v.* DETROIT CITIZENS' STREET-RAILWAY CO.

STREET RAILWAYS—COLLISION WITH TRAVELER—NEGLIGENCE—QUESTION FOR JURY.

> Plaintiff, while driving along a street, in order to pass a buggy standing next to the curb, without looking back, turned in towards defendant's tracks, and the front wheel of her buggy was struck by a car going in the same direction. There was testimony tending to show that she turned when 20 feet from the buggy, and had nearly passed it when struck; that the car was 250 feet away when the turn was made, and could have been stopped within 100 feet. *Held,* that it was a question for the jury as to whether the motorman could have seen the plaintiff and stopped his car in time to prevent the accident. GRANT, J., dissenting.

Error to Wayne; Carpenter, J. Submitted April 25, 1902. (Docket No. 136.) Decided June 27, 1902.

Case by Augusta Boettcher against the Detroit Citizens' Street-Railway Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*William Look* ( *Harry F. Chipman*, of counsel), for appellant.

*Brennan, Donnelly & Van De Mark*, for appellee.

MONTGOMERY, J. In this case it appears that, while plaintiff was driving east, the front wheel of her buggy was struck by a car approaching from the west. The testimony shows that she turned in towards the track to pass another buggy standing by the curb. Before this inturn was made, the appearance did not indicate to the motorneer any danger. It is defendant's contention that the turn was made so suddenly that the motorneer had not time to check the car after discovering plaintiff's danger, and that the case falls within the case of *Fritz* v. *Railway Co.*, 105 Mich. 50 (62 N. W. 1007), and is not within any exception to the rule there laid down. The circuit judge so held.

The evidence tended to show that there was standing by the side of the road a buggy, which made it necessary for the plaintiff to turn in towards the track, and that she did in fact turn in. One witness testified that she turned in towards the track when she was about 20 feet from the other buggy, and that at this time the car which came in contact with her was half a block away. The block, according to the offer of proof, treated as made, was 500 feet in length, and the plaintiff offered to show that the car could be stopped on that track within 100 feet. It is true that one witness was made to state, on cross-examination, that from the time plaintiff turned in on the track until she was struck did not take very long, and, in

answer to the question, "Wasn't it instantly, almost?" replied that it was. The examination was attempted of another witness upon this subject, on cross-examination, when the following occurred:

"*Q.* If she was midway between the curb and street-railway track, how did she get within a foot of the track?

"*A.* When the car struck her, she was pretty well past this other buggy, and she had to come near to the track.

"*Mr. Brennan:* I don't want that.

"*Mr. Humphrey:* I object.

"*The Court:* Ask another question."

· The circuit judge held that the plaintiff was guilty of negligence in going so near the track without looking for the approaching car. We think the question whether the plaintiff was in position to have been seen by the motor-neer a sufficient length of time to have enabled him to stop the car was a question for the jury. See *Tunison* v. *Weadock,* 130 Mich. 141 (89 N. W. 703), and cases cited; *Quirk* v. *Railway,* 130 Mich. 654 (90 N. W. 673).

Judgment reversed, and a new trial ordered.

HOOKER, C. J., and MOORE, J., concurred with MONT-GOMERY, J.

GRANT, J. (*dissenting*). I think the learned circuit judge properly directed a verdict for the defendant, within the former decisions of this court. Plaintiff herself testi-fied that, when she began to turn towards the track, she · was only five or six feet from the stationary buggy, and that, when she turned in towards the track, she did not look to see whether a car was coming. In reply to a ques-tion she said: "I could not see; I got my phaeton; how can I look back? My phaeton was up; how can I look back?" She must have known that she was suddenly turning within the path of the approaching car. When one does that, he should be held to the same duty to look as when he intends to cross the track.

A motion for a new trial was made, when the circuit judge filed a written opinion which, in my judgment, is so convincing that I quote it with approval:

"A new trial is asked in this case on the ground that I erred when on October 16, 1896, I directed a verdict for the defendant. In determining this question, the most favorable view possible to plaintiff should be taken of the testimony. According to that view, plaintiff, seated in a covered phaeton, drove from Riopelle street on the north side of Gratiot avenue. She looked at this point, and saw no car coming from either direction on Gratiot. She then crossed the tracks, and drove slowly in an easterly direction on the south side of Gratiot until she reached the middle of the block between Riopelle and Orleans streets. At this point, which, according to the testimony, is about 250 feet from Riopelle street, a vehicle was hitched to the south curb. 'It was up the same as a horse would be that was tied and brought up to the curbstone,' testified Mr. Vonderheide, plaintiff's witness, who is the only witness who testified on that subject. When plaintiff reached this vehicle at a distance testified by plaintiff to be five or six feet, and by one of her witnesses twenty or thirty feet, she turned north towards the south rail of the track to pass this vehicle. At this time one of the defendant's cars was approaching from the west at the rate of 15 miles an hour, and was, according to one of plaintiff's witnesses, 20 feet, and, according to another, half a block, away. While plaintiff was passing said vehicle, or just after she passed it, the running-board of said car, of whose approach said plaintiff was not warned, collided with the forward wheel of her phaeton, the phaeton was overturned, and plaintiff injured. It is not claimed that plaintiff made any observation after she left Riopelle street, and the evidence, in my judgment, conclusively proves that she did not, to ascertain if any car was approaching from the west. The distance from the south track to the south curb is 15½ feet, and the gauge of an ordinary vehicle is conceded to be four feet eight inches.

"Plaintiff was guilty of contributory negligence in voluntarily driving where her vehicle was in the path of the approaching car, without making any observation. *Fritz* v. *Railway Co.*, 105 Mich. 50 (62 N. W. 1007). It is said that the *Fritz Case* is practically overruled by *Ryan* v. *Railway Co.*, 123 Mich. 597 (82 N. W. 278). I cannot agree. I think, if the Supreme Court intended to overrule a case which it has repeatedly approved, the public and profession would have explicit notice. In the *Ryan Case* it was held that it was not, as a matter of law, neg-

ligent for a person to attempt to cross a track when he had by observation ascertained that no car was within 70 or 80 feet. In tnis case plaintiff drove 250 feet after she had made her last observation before attempting to cross the track. While plaintiff went this 250 feet at the rate of three miles an hour, which is estimated to have been her rate of speed, the car which struck her, and which was going at the rate of 15 miles an hour, would have moved 1,250 feet. The observation she made at Riopelle street gave her no right to believe no car was within 1,250 feet. That observation afforded no more protection than as if it had been made the day before. It counted for nothing. It did not bring her case under the principle of the *Ryan* decision. It left it governed by the principle of the *Fritz Case.*

"It is argued that there was evidence from which the jury could have found that the contributory negligence of the plaintiff was not a proximate cause of her injury. It is urged that the motorman had an unobstructed view of plaintiff, and should have seen that, unless the car was checked, there would be a collision. A careful examination of the testimony convinces me that there is no evidence from which it can be inferred that the motorman should have seen that, unless the car was stopped, a collision would result, long enough before it occurred to prevent it. Plaintiff's vehicle was not in a position to be struck by the car long before the collision occurred. Plaintiff testifies that she was a distance estimated to be five or six feet from the stationary vehicle when she turned to pass it, and that she was struck before her buggy had entirely passed said stationary vehicle. Her witness Koehn says she was struck 'instantly almost' after she turned in on the track. Her other witness, Vonderheide, says that plaintiff was about 20 feet ahead of the car when he first saw her (she was then in the middle of the space between the curb and the south track), that the gong was sounded eight or ten feet away from her, and that the brakes were applied a moment before the collision occurred. Of course, these estimates of time and distance are not accurate; but, accurate or inaccurate, the testimony of these witnesses— and theirs is all the testimony on the subject, for I cannot regard plaintiff's affidavit, which is not consistent with her testimony nor with that of her witnesses—does not justify the inference that plaintiff's vehicle was in the path of the approaching car for any appreciable time before the

collision. Nor can that inference be drawn from the fact that the point of collision was the left forward wheel of the phaeton just as it was turned towards the curb. This fact proves that the forward wheels were nearer the track than the hind wheels. It does not prove, what is denied by plaintiff's witness Koehn, that the wheels had been nearer, or in this position, until that instant.

"It will not do to argue that the motorman should have commenced to check the car when plaintiff attempted to pass the horse and vehicle tied on the south side of Gratiot avenue, and that his failure so to do was such negligence as to make defendant liable notwithstanding the contributory negligence of plaintiff. As already shown, plaintiff, to pass the stationary vehicle, did not pass upon the street-railway track. She was only sufficiently near to collide with its projecting running-board. It was 15½ feet from the curb to the nearest rail of the track. That stationary vehicle seems to have been close to the curb, and that, as well as plaintiff's phaeton, was less than five feet in width. As testified by plaintiff's witness Koehn, there was room for these two vehicles, if properly driven, 'side by side, to let the car go by.' To pass the stationary vehicle, the evidence fails to show that it was necessary for plaintiff to drive upon the path of the approaching car. The collision could have been averted as well by plaintiff keeping close to the stationary vehicle as by defendant's motorman checking the car. It was certainly as much negligence for plaintiff to needlessly drive her phaeton in the path of the approaching car as for the motorman to neglect to check the car's speed. The duty of the motorman to check the car's speed was by no means the same as it would have been had it been apparent that, to pass the stationary vehicle, plaintiff must pass upon his track. The motorman had the same right to rely on plaintiff's keeping away from the track as plaintiff had to rely on his checking the car. In no sense was plaintiff's negligence remote and defendant's proximate. If defendant was negligent at all, plaintiff was negligent at the same time and in an equal degree. If defendant's negligence caused the collision, plaintiff's negligence equally caused it. The principle upon which the plaintiff's negligence is adjudged remote, and the defendant's proximate, is, as I understand, that, at a time after plaintiff was negligent, plaintiff could not, but defendant by due care could, have prevented the injury. There never was a time, when due

care on the part of the defendant would have prevented the injury in question, that plaintiff could not also by due care have prevented it.

"It follows that the motion for a new trial should be denied "

I do not think the case of *Tunison* v. *Weadock*, 130 Mich. 141 (89 N. W. 703), controls this case. The prevailing opinion in that case appears to be based largely upon the fact that the plaintiff was riding in a beaten path which "took him and his conveyance very near to the car track," and that the evidence did not conclusively show that the driver of the vehicle suddenly turned towards or across the track.

LONG, J., did not sit.