CARDINAL *v.* HOUGHTON COUNTY STREET RAILWAY CO.

1. STREET RAILROADS—COLLISION WITH VEHICLE—CONTRIBUTORY NEGLIGENCE.

Considering plaintiff's case in its most favorable light, he was guilty of contributory negligence in attempting to drive across defendant's car track, at a curve, with the car coming behind him in plain view, where he merely looked to one side so as to obtain a view from 5 to 6 feet back, and was struck by the car as it turned the corner.

2. SAME—CONTRIBUTORY NEGLIGENCE—DISCOVERED NEGLIGENCE.

The trial court having held that the verdict was against the weight of the evidence, it is not a proper case for the application of the rule that a plaintiff is entitled to recover if his negligence was or ought to have been discovered in time to have prevented the injury. BLAIR and BIRD, JJ., dissenting.

Error to Houghton; Streeter, J. Submitted June 8, 1910. (Docket No. 25.) Decided March 31, 1911.

Case by Dolphis Cardinal against the Houghton County Street Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Allen F. Rees*, for appellant.

*P. H. O'Brien* (*W. A. Burritt*, of counsel), for appellee.

McALVAY, J. Plaintiff recovered judgment against defendant for injuries claimed to have been negligently inflicted upon him by defendant in the operation of one of its cars. A part of defendant's street railway runs from Red Jacket to Houghton. This electric road, in going from the former to the latter place, passes through the village of Laurium along Lake Linden avenue to Florida street, which joins Lake Linden avenue at about a right angle. The car tracks turn into Florida street on a curve and continue on said street towards Houghton. Along these streets the line is double tracked, running on each side of their center lines for the entire distance involved in this case. Lake Linden avenue extends on in an easterly course beyond Florida street to the village of Lake Linden.

On the day in question, July 16, 1907, plaintiff, who was a truck farmer and lived in Lake Linden, had been peddling his produce from house to house in the village of Laurium, and also in Red Jacket and Calumet. He drove a one-horse buggy without a top, and had a boy to help him and to tend the horse. He took a lunch in a saloon, and they visited all the saloons in Laurium and Red Jacket in the course of trade during the day. Returning towards home in the afternoon, driving towards the east along the south side of Lake Linden avenue, with the boy riding on the seat next to the car track, intending to proceed on Lake Linden avenue beyond Florida street, he claims that, just as his horse had stepped on the first track,

a car of defendant coming up behind him on the south track, which he was crossing, struck the front wheel of the buggy and threw him forward on the dashboard, breaking his leg at the ankle. The boy received some bruises on the left side of his face and jumped off. As the car track makes this curve into Florida street, it comes nearer the curve at the corner, leaving quite a narrow passage between the side of the car and the curb. At the time of the accident, a car bound in the opposite direction for Red Jacket was standing on the other track 105 feet south of the intersection of these streets.

Plaintiff says that he looked back to see if a car was approaching when he got to the last block, which would be about 250 feet from where the accident occurred at the curve, and could see two or three blocks, and saw no car coming. When he got ten feet from the curve he says he looked on the side a little bit back and saw or heard no car. He says the horse got on the track, and he then saw the car coming alongside of him. He pulled instantly on the horse to get him from the track, and the collision occurred. There is some disagreement in the testimony for plaintiff as to whether or not the horse and buggy were on the track at the time the car struck it. One witness, who was a passenger in the car which was standing still on the other track south of the place of collision, testified that the buggy was on the track. The testimony of the plaintiff and the boy is to the effect that the buggy was not upon the track. The undisputed fact is that the horse was not injured at all, and that when the car stopped, the buggy was alongside of the car and between it and the sidewalk. The damage to the buggy consisted in breaking the forward left wheel, one of the thills, and part of the dashboard. After the car struck the buggy, all the witnesses agree that it moved but a short distance; the boy says about one foot. Some of the witnesses on the part of plaintiff testified that the car had a speed of 20 miles an hour until it came to the curve. The testimony for defendant tended to show that the car

was running slowly the whole length of this block, under perfect control; that plaintiff drove rapidly up from behind the car, urging his horse, attempting to get ahead, and was not seen by the motorman; that as the car rounded the curve it collided with the plaintiff's rig just before he reached the track in an attempt to cross ahead of the car; that plaintiff had been drinking, and his injury was caused by his own negligence.

The court submitted the case to the jury, which returned a verdict for plaintiff. A motion for a new trial was denied. The errors assigned and relied upon by defendant relate to the refusal of the court to direct a verdict for defendant; the refusal to give certain requests to charge; rulings on certain evidence; and the refusal to grant a new trial. When the plaintiff rested his case, and also at the close of the entire case, defendant moved and requested the court to direct a verdict in its favor on account of the contributory negligence of the plaintiff.

The record shows without dispute that plaintiff was perfectly familiar with the crossing of the car tracks at the place in question; that for several years he had crossed it frequently in going from and returning to his home. The entire distance from the place where he was injured along Lake Linden avenue westerly for several blocks, a distance of 1,000 to 1,200 feet, was level, straight, and unobstructed.

In determining whether or not the court was in error in denying defendant's motion, we must give the plaintiff's case its greatest probative force, and find, as a matter of law, that upon his own showing he was guilty of contributory negligence. Plaintiff testifies that he was driving along this street with the horse upon a walk for the last block. He says on direct examination:

"I was driving on Lake Linden avenue, and I got to the last block. It was about by Hebert's place. I looked behind me, I don't know how far, maybe a block or two behind me. I didn't hear any car coming. I thought to drive along slowly—the horse was on a walk as far as the

-corner, and before I got to Florida crossing, and about 10 or 15 feet before I tried to cross the track, I was busy to look ahead of me to see if any car was coming from Houghton or Lake Linden, and I happened to see a Lake Linden car was laying there not far from the curve, laying still, and I turn on the side and was listening to see if I could hear any car coming from behind me. I didn't hear any car coming from behind me, and I didn't see none. I thought I was all right as far as the curve.
\* \* \*

"*Q.* Did you, or did you not, look to see whether a car was coming from behind?

" *Mr. Rees:* Same objection.

" *The Court:* I think that is subject to the same ruling; but, being the third question, I will permit it to be answered, and give you an exception. \* \* \*

"*A.* Yes sir; before I got to the curve on the crossing, I look to the side and I was listening if I could hear a car coming. I didn't see no car coming. I didn't hear anything. I thought I was all right, and as soon as the horse was on the track, the first thing I see the Houghton car was coming alongside of me, and 'Lord,' I says to myself, 'I am too late!' \* \* \* I recollect a pole at the corner of Lake Linden avenue and Florida street.

"*Q.* When you looked to the side to see if you could hear something coming, you may tell us where you were with reference to that pole, how far from the pole?

"*A.* I was about 15 feet from the pole when I look on the side. I cannot tell exactly how far I look back along the rack, but I can tell as near as I think I did look. I was about ten feet from the curve. Before I got to the curve the last time I look on the side about maybe five or six feet. I was listening at the same time if I could hear any car coming behind me, and I didn't hear no car coming behind me, and I didn't see no car behind me." \* \* \*

On cross-examination witness repeats his testimony about looking back the first time about two blocks, and says concerning the last look at the curve:

" I look on the side a little bit back. I look on the side. We can see a little back when we look on the side. I didn't see the car. I didn't look far back. I was looking ahead. I was more fear for the Houghton car (the one coming behind him). The Lake Linden car was stopped.

I saw the Lake Linden car was lying still, so I thought I was all right to cross the curve.

"*Q.* And you didn't look back to see any car coming from behind?

"*A.* When I got to the curve I just look on the side."

This is all of plaintiff's testimony, and all of the evidence on his part, showing the degree of care he exercised as he approached the crossing at this curve.

The degree of care which a person is bound to exercise in crossing a car track, which of itself is a place of danger, is such care as the situation and surroundings demand of a prudent and careful person. *Gardner* v. *Railroad Co.*, 97 Mich. 240 (56 N. W. 603); *McGee* v. *Railway Co.*, 102 Mich. 115 (60 N. W. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507); *Bennett* v. *Railway Co.*, 123 Mich. 692 (82 N. W. 518). After he took his first look behind him at a distance at least 250 feet from the crossing, until he was injured, he took no look behind, except, as he states, looking a little to the side, which he thinks gave him a view of 5 or 6 feet behind him. He had an unobstructed view behind for 3 blocks and more, and, when about 75 feet from the crossing, an unobstructed view in front of him to the corner and down Florida street, the only direction, other than from behind him, from which danger could threaten. He saw the other car standing there, and knew that danger, if any there could be, must arise from a car approaching from behind. At the time he looked a little to one side, one look behind, which he was bound to give, would have disclosed this approaching car which was then in full view. We can draw no other conclusion from his testimony and the undisputed physical facts which make it certain that if he had looked he would have seen the approaching car, but that he was guilty of negligence which contributed to his injury.

It is contended that, under the circumstances shown by the record, this case is brought within our decisions which hold that, notwithstanding the negligence of plaintiff, it is a question of fact for the jury whether or not the motor-

man after discovering such negligence by the exercise of reasonable care could have avoided the collision.

Whether this case comes within the rule laid down in the line of cases cited can be determined only from an examination of the evidence in the record. The case has been tried three times. In denying defendant's motion for a new trial after the last trial—the motion was upon the grounds: (1) That the verdict was against the weight of evidence; and (2) that plaintiff was guilty of contributory negligence—the trial court said:

"This cause has been tried in this court three times. The verdict of the jury on the first trial was in favor of the plaintiff. On motion of the defendant the verdict was set aside and a new trial granted, because the verdict was clearly against the weight of the evidence. On the second trial the jury disagreed, and a third trial was had, resulting in a verdict in favor of the plaintiff. The testimony offered and received on the three trials was substantially the same. My opinion, entertained at the close of the first trial, that the verdict was contrary to the weight of the evidence, remains my opinion at the close of the third trial." * * *

He further says:

"In the present case, so strong is my opinion as to the weight of the evidence that I should probably grant a motion, could I discover any way of submitting the second ground on which the motion is based to the determination of the Supreme Court without the expense of another trial."

This is the judgment of the court who tried the case three times upon the weight of the evidence. We do not determine that question; but we may give it consideration in determining whether, under the evidence, a case is disclosed where the doctrine of discovered negligence should be applied. From our examination of the evidence we find that this is not a case for the application of that doctrine, and determine that, as a matter of law, plaintiff was guilty of contributory negligence and cannot recover.

It follows that it will not be necessary to consider other questions.

The judgment is reversed and set aside, and a new trial will be granted.

BROOKE and STONE, JJ., concurred with McALVAY, J.

BLAIR, J. I concur in the reversal of this case upon the ground that the plaintiff was guilty of contributory negligence, as a matter of law, and that the jury should have been so instructed. I am not prepared, however, to hold, as a matter of law, that there was no evidence which would permit of the application of the doctrine of discovered negligence, and am therefore of the opinion that a new trial should be ordered.

BIRD, J., concurred with BLAIR, J.