## BORSCHALL *v.* DETROIT RAILWAY.

STREET RAILWAYS—ACCIDENT AT CROSSING—EXCESSIVE SPEED—
CONTRIBUTORY NEGLIGENCE.

The rule that the contributory negligence of the plaintiff in an
action for personal injuries does not prevent a recovery where
the defendant, who knew, or ought by the exercise of the most
ordinary care to have known, of the precedent negligence of
the plaintiff, by his subsequent negligence did plaintiff the
injury, has no application to a case where a person was injured
in a reckless attempt to drive across a street-railway track in
front of an electric car, which was operated by a competent
motorman, who gave the proper signals, and did all within his
power to stop the car in time to avoid the accident, even though
the car was being run at an excessive rate of speed.

115 473
119 588

115 473
120 402

115 473
123 598
123 600

115 473
s73NW 551
130 657

115 473
134 144

115 473
135 86

115 473
j145 17

115 473
147 538

115 473
156 75

Error to Wayne; Hosmer, J.    Submitted October 15,
1897.    Decided January 4, 1898.

Case by August Borschall against the Detroit Railway
for personal injuries.    From a judgment for plaintiff, de-
fendant brings error.    Reversed.

*T. T. Leete, Jr.,* for appellant.

*Lehman Bros.* and *F. J. Riggs,* for appellee.

LONG, J.    This action was brought to recover for per-
sonal injuries received by the plaintiff, which, it is claimed,
were the result of the carelessness of the defendant com-
pany.    The plaintiff had verdict and judgment for $2,000.

On February 11, 1896, about 2 o'clock in the afternoon,
the plaintiff was driving east on Elizabeth street in De-
troit.    The defendant has a double track on Clifford
street, which crosses Elizabeth at right angles.    The west
track is used by cars south bound, and the east track by
cars going north.    The plaintiff is about 54 years old, and
has lived in Detroit about 14 years.    On the day in ques-

tion he was driving a team of horses hitched to a heavy dirt wagon, and had been for several days hauling dirt over this street to the west, returning eastward with an empty wagon. On his direct examination he testified that, going east, when he got to the defendant's track on Clifford street on the occasion of the injury, he looked towards Henry street (which is north of Elizabeth), and did not see anything; that he then looked down the street (south), saw a car coming, and backed out of the way of it, and the car passed him, and went north, and that was the last he knew until he found himself in the hospital. On his cross-examination he testified that in looking north he could see two blocks, and that there was nothing in the way of his seeing up to Henry street. Mr. Bell, a witness for plaintiff, testified that he lived on the northwest corner of Elizabeth and Clifford streets, and was standing on the steps of his house; that he saw the plaintiff drive up to the west track, his team on a walk; that, as he arrived there, he stopped his team, to let a car pass going north; that he then seemed to urge his horses across the track, and that, as his team get across the track, a car coming from the north struck his wagon, causing the injury. Witness stated, "I should judge that he looked both ways." Witness further stated that all he heard was the "rumbling" of the cars. Mr. Klein was also called by plaintiff, and testified to having seen the collision. He was sitting in his house, on Elizabeth street, next to witness Bell, looking out of the bay window, with the doors of his house all closed. He saw plaintiff before the collision, just as he was on the track, and saw the car strike his wagon. He testified that he heard no bell sounded. He was asked the speed of the car, but was uncertain about it, but stated that plaintiff, when picked up, was some 50 feet from where the car first struck the wagon. Plaintiff was seriously injured.

The averment of the first count of the declaration is that the car was being propelled at an unusual, reckless, and dangerous rate of speed, and was in charge of a motorman

who was careless, reckless, negligent, and incompetent, and who made no effort to arrest the car before crossing Elizabeth street, although he saw plaintiff in a dangerous position in time to have stopped his car had he made any reasonable effort to do so. The second count sets out that the plaintiff's view of the approaching car, was obstructed; that he stopped, looked, and listened, but saw no car approaching, until he got so close to the track that it was dangerous to attempt to retreat, when he saw the car coming, but that the same was such a distance from him that he thought he could safely make the crossing, and could have done so if the car had been running at a reasonable rate of speed, and had been in the care of and under the control of a competent motorman; and that the car was recklessly and negligently operated. The third count states that the car was negligently and recklessly operated; that no gong was sounded, and no other warning of its approach given; and was in charge of a reckless and negligent motorman, who ran it at a dangerous rate of speed, and who did not stop said car, or attempt to stop it, although the plaintiff was in plain sight while attempting to make the crossing. This count also avers that the plaintiff's view was obstructed by telegraph, telephone, and trolley posts, and other obstructions, which prevented him from seeing the car until he was so close to the tracks that it was dangerous for him to retreat; and that he could have made the crossing with safety, except for the dangerous rate of speed of the car. It is also averred that the motorman had abundant time to stop the car after the plaintiff's perilous position was apparent to him; that he made no effort to do so, but carelessly, negligently, and recklessly ran the plaintiff down, etc.

The defendant called the motorman of the car. He testified that the car was running not to exceed eight miles an hour; that the gong was being sounded after passing the alley first north of Elizabeth street; that he first saw the plaintiff when the car was from 60 to 90 feet north of Elizabeth street, and that plaintiff

was approaching the crossing on a trot; that he started to throw off the current, rang the bell, and started to put on the brake; that he then reversed the car; that plaintiff did not stop, but made an effort to do so when his horses were nearly on the track; that plaintiff looked neither to the right nor left when he was coming onto Clifford street, and that he then looked towards the approaching car, and made an effort to draw his horses up, and then commenced "slashing" them to go ahead. Witness further testified that his car was reversed at that time, but that the track was very bad, as the mud dropping from wagons had made it slippery. He also testified that there is quite an incline in the track after crossing Elizabeth street, and that but for this, and the mud on the track, he could have stopped quicker. The conductor of the car corroborated the motorman in reference to the speed of the car and the ringing of the gong, as well as to the prompt effort of the motorman to stop the car, and also as to seeing the plaintiff "slashing" his horses. Some other witnesses were called by defendant,—some of them passengers on the car, others who saw the collision from the ground; and all testified that the car was "going at a checked rate of speed," the gong being sounded; that the motorman, the moment the plaintiff appeared to be going to cross the track, did all in his power to stop the car; and some of the witnesses testified that the car was stopped within 20 feet beyond the place of collision. Mr. Heyniger, a witness for defendant, testified that he was driving on Elizabeth street, near Clifford, when he saw the car coming down Clifford street. He says it was running at a slow rate of speed; that the gong was ringing; and that the car was stopped in a very short space near Elizabeth street. He saw the plaintiff approaching the track, and says that he evidently intended at first to stop, and wait for the car to pass, but seemed suddenly to change his mind, started up, and tried to get across before the car could reach him.

Counsel requested the court to direct the verdict in

favor of defendant. This the court refused, but stated that there could be no question but that the plaintiff was guilty of contributory negligence, and could not recover unless there was gross negligence shown on the part of the defendant. The court referred to *Denman* v. *Johnston*, 85 Mich. 387, as to the rule that, where gross negligence is shown, plaintiff may recover, notwithstanding he may be guilty of contributory negligence. We think the court was correct in saying that the plaintiff was guilty of contributory negligence. There can be no question upon this record but that, had he looked before entering upon this track, he must have seen the car approaching Elizabeth street. If he did not look, he was clearly guilty of negligence, for, in the absence of something to excuse the performance of that duty, it was incumbent upon him, before attempting to cross, to take proper means of ascertaining whether the way was clear. *Fritz* v. *Railway Co.*, 105 Mich. 50. If he saw the car coming, and then attempted to cross, he took his chances of being injured, and cannot complain. He had lived in Detroit for many. years. He knew the car could not turn out, as it ran in grooved rails, and he must have known that it could not be stopped instantly. From the undisputed evidence, there was nothing to indicate to the motorman that he intended to cross until it was too late to stop the car.

There was no evidence given by the plaintiff that the car was running at a very great or dangerous rate of speed, and no direct evidence that the bell was not sounded; while on the part of the defendant many witnesses testified that it was running either under a "checked rate" or slow, and that the bell was sounded. But, even if it were running at a speed of more than eight miles an hour, there certainly is nothing in the case showing or tending to show that the defendant was guilty of such gross negligence that the plaintiff had a right to recover notwithstanding the plaintiff's contributory negligence. There was no evidence that the motorman was incompetent, reckless, or negligent. As was said in *Richter* v. *Harper*, 95 Mich. 221:

"It is urged by plaintiff's counsel that the negligence of defendants was so gross and willful as to excuse concurring negligence on the part of the plaintiff, it being claimed that, where the negligence of the defendant is gross or willful, the contributory negligence of the plaintiff is not a defense. This is but another way of stating the doctrine of comparative negligence, which never obtained in this State. It is true that the contributory negligence of the plaintiff does not prevent recovery in a case where the defendant, who knows, or ought by the exercise of the most ordinary care to know, of the precedent negligence of the plaintiff, by his subsequent negligence does plaintiff an injury,"—citing *Battishill* v. *Humphreys*, 64 Mich. 514; *Belt Railroad, etc., Co.* v. *Mann*, 107 Ind. 89; and Cooley, Torts, 674.

Judge Cooley says:

"In such cases it may be said that the negligence of the plaintiff only put him in position of danger, and was, therefore, only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause."

· It was further said, in the case of *Richter* v. *Harper, supra:*

"This rule does not permit recovery notwithstanding plaintiff's contributory negligence, but it recognizes that such discovered negligence of plaintiff, or his negligence which should have been discovered, is not a contributing cause to the injury in a legal sense. This, we think, is the logical statement of the rule as deduced from the authorities,"—citing 4 Am. & Eng. Enc. Law. 80, and notes.

In the present case, as in that, it may be said, "This rule has no application to the present case." The plaintiff was certainly negligent in not seeing the approaching car, as, if he had looked, he could have seen it; and, if he did not look, he was equally guilty of negligence. He was seen by the motorman as he was about to enter upon the track. From that time on the testimony shows conclusively that the motorman did all in his power to stop the car, and prevent the collision. He reversed the motor,

put on his brake, and continuously rang the bell. As was said in *Fritz* v. *Railway Co.*, *supra:*

"If we assume that, under these circumstances, the plaintiff had, by this act, placed himself in a position where his negligence might have been discovered, and the car brought under control, it will result that, in every case where an attempt to cross ahead of a street car is made, the question whether there was a timely discovery of the situation will turn upon whether the motorman could have stopped his car after the attempt was made; and it would follow that, if he could, his negligence will authorize a recovery, notwithstanding the contributory negligence of plaintiff. With such a rule, there could no longer be any such thing as contributory negligence defeating a recovery in any case where the defendant's negligence consists of failing to control the car."

The court below should have directed the verdict in favor of the defendant, as requested. In this view of the case, no other assignments of error will be discussed.

The judgment will be reversed, and a new trial granted.

The other Justices concurred.