QUIRK v. RAPID RAILWAY.

1. STREET RAILWAYS — PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE.

Plaintiff claimed that, while he was walking along a highway, defendant's regular train, an electric car, passed him, and that he soon afterwards went upon that portion of the highway occupied by the defendant's railway track, and followed it for 200 feet without looking back, when he was struck by a gravel train approaching from behind. The motorman saw him when 200 feet distant. The testimony was conflicting as to whether the gong was sounded and the train brought under control. Held, that the questions of negligence and contributory negligence should have been submitted to the jury. GRANT, J., dissenting.

2. SAME — TRAVELER ON RAILWAY TRACKS — PRECEDENT NEGLIGENCE.

A traveler walking upon the part of the highway occupied by a street-railway track is not to be treated as a trespasser, and if, after seeing him, the motorman, having sufficient time, fails to take proper precautions to prevent an injury, a precedent negligence of the traveler constitutes no defense. Per MONTGOMERY and MOORE, JJ.

3. SAME—DUTY OF MOTORMAN.

Where a person is walking upon a street-railway track in the highway a sufficient length of time, in full view of the motorman of a car approaching from behind, the latter is bound to bring his car under control, or give the footman notice in time to prevent an injury. Per MONTGOMERY and MOORE, JJ.

Error to Wayne; Frazer, J. Submitted January 30, 1902. (Docket No. 1.) Decided June 3, 1902.

Case by John Quirk, by next friend, against the Rapid Railway, for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

Seth E. Engle, for appellant.

Brennan, Donnelly & Van De Mark and Henry L. Lyster, for appellee.

MONTGOMERY, J.   The plaintiff, who, at the time of the injuries received, was between 14 and 15 years of age, was run into by one of defendant's gravel trains, which consisted of three short cars filled with crushed stone, which were being pushed ahead of the motor.   According to the plaintiff's testimony, he passed out of his own yard about 6 o'clock in the evening, drawing his young brother in an improvised cart, by means of a rope which was thrown over plaintiff's shoulders and brought under his arms.   He testifies that he proceeded in the direction of Mt. Clemens, and when 195 feet, or thereabouts, east of the point at which he entered the highway, he saw the defendant's regular train going towards Mt. Clemens; that he followed along a farther distance of about 190 feet, reaching a place where there was a plank walk extending across the track, and entered upon the space occupied by the track of defendant, and pursued his way to the east.   He testifies that, after the car passed him, he did not again look in the direction of Detroit for approaching cars, but thought that no other car would be following closely upon the regular passenger car.   After entering upon the portion of the highway traversed by defendant's tracks, he followed the track, according to his testimony, 204 feet, when he was struck by the defendant's train.

The motorneer was called as a witness for the defendant, and testified that he saw the two boys when they were in the middle of the road, and that when he was within a couple of hundred feet of them they turned on the track with their cart; that he at once sounded the gong, and tried to attract their attention, and stop his train, as soon as they were on the track; that when within 20 feet of them they happened to hear the gong, looked up, and tried to jump off the track; that they were both clear of the rails, but the cart caught on the outside rail as they tried to get off, and the train struck the cart and cut plaintiff's arm off.   In another portion of his testimony the witness states that the boys got on the track in front of Mr. Reuhle's place, which, as would appear from the map

introduced, is a point nearer Detroit than that given by the plaintiff himself, so that, if the plaintiff entered upon the track at Reuhle's, he must have traveled on the track a greater distance than 204 feet.

There was testimony tending to show that the gong was not sounded, and also tending to show that the car ran a considerable distance after the plaintiff was struck, indicating that it had a considerable speed, and had not been brought under control. The defendant's testimony disputed both these claims. The circuit judge expressed the opinion that there was sufficient evidence to justify submitting the case to the jury upon the question of defendant's negligence, but he withdrew the case from the jury upon the ground that the plaintiff was conclusively shown to be guilty of contributory negligence.

If the defendant's testimony as to the facts were to be credited and accepted as true, the plaintiff was undoubtedly guilty of negligence contributing to the injury. But if, on the other hand, the plaintiff, after entering upon the track, was pursuing his way on this public highway, in full view of the motorneer, for a distance of 204 feet, we are not prepared to hold, as a matter of law, that he was guilty of contributory negligence. This is not a steam railroad. The plaintiff was in no sense a trespasser. This railroad company occupies a portion of the public highway. Travelers have the right to continue to travel upon this highway, and are not to be treated as trespassers; and if, after discovering that the plaintiff was upon the track, the motorneer failed to take proper precautions to prevent injury to him, a precedent negligence of the plaintiff, if there was any, constitutes no defense. *Richter* v. *Harper*, 95 Mich. 225 (54 N. W. 768). His presence there would furnish an opportunity for injury, but would not be, in any legal sense, a contributing cause to it. It is immaterial whether he had been pursuing his course on this highway, and within the lines of the railway tracks, for 204 feet or for half a mile, as it affects the negligence of defendant in running him down, provided he was upon

the track a sufficient length of time, in full view of the motorneer, so that, by a proper control of his train, he could have prevented the injury, or have given plaintiff notice in time to avoid the injury.

The defendant relies, in support of the ruling of the court below, upon the cases of *Fritz* v. *Railway Co.*, 105 Mich. 50 (62 N. W. 1007); *Doherty* v. *Railway Co.*, 118 Mich. 209 (76 N. W. 377, 80 N. W. 36); and *Borschall* v. *Railway*, 115 Mich. 473 (73 N. W. 551). In none of these cases were the facts analogous to the case under consideration. These were cases in which it appeared that the attempt to cross the track was sudden, and unexpected to the motorneer. The element of a traveler lawfully pursuing his way ahead of the car, and in the same direction as the car, was not present.

The question in this case was recently considered by this court, and ruled adversely to the contention of the defendant's counsel, in *Tunison* v. *Weadock, ante,* 141 (89 N. W. 703), in which case attention was directed to the fact that *Fritz* v. *Railway Co.* had been previously distinguished by this court, in an opinion by Mr. Justice LONG, in *Rouse* v. *Railway*, 128 Mich. 149 (87 N. W. 68). See, also, as further supporting the views here expressed: *Little* v. *Railway Co.*, 78 Mich. 205 (44 N. W. 137); *Rascher* v. *Railway Co.*, 90 Mich. 413 (51 N. W. 463, 30 Am. St. Rep. 447); *Laethem* v. *Railway Co.*, 100 Mich. 297 (58 N. W. 996); *Bush* v. *Railway Co.*, 113 Mich. 513 (71 N. W. 851); *Blakeslee* v. *Railway Co.*, 112 Mich. 63 (70 N. W. 408); *McClellan* v. *Railway Co.*, 105 Mich. 101 (62 N. W. 1025).

The judgment will be reversed, and a new trial ordered.

MOORE, J., concurred with MONTGOMERY, J.

HOOKER, C. J.    I think that the questions of negligence and contributory negligence should have been submitted to the jury, and therefore concur in the reversal of the judgment.

GRANT, J. (*dissenting*). I think the court properly directed a verdict for the defendant. The acts of negligence counted on are high rate of speed, that the train was running backwards, that no lookout was kept at the rear end of the train, that there was a failure to sound the gong, and a failure to have good and sufficient brakes. I find no evidence to sustain any of these allegations. The train was not running backwards, but the motor was pushing two flat cars and a dump car ahead of it in the usual manner. The flat cars were about 13 feet long, and the dump car about 6 or 7 feet long. All three cars that were ahead of the motor were not as long as the ordinary passenger car. The cars were loaded with stone, and the motorman stood in the usual place, and had complete view of the track ahead.

Plaintiff had tied himself to a cart, in which he was drawing his brother along the track. He does not state that he was listening for a train or for the sound of the gong. Evidently he and his brother were not. They were playing like boys, heedless of any danger, and not expecting a train. But his little brother in the cart did hear a sound or saw a train, and gave the alarm. His little brother had time to get out of the cart and get off the track in safety. Plaintiff got off the track, but the wheels of his cart caught somehow in the track. He could not free himself from his harness, and was struck. The only other witness as to the ringing of the gong was Mrs. De Fau, who was a passenger on the passenger car immediately preceding the stone train. The stone train passed her, after which she turned off the highway into a lane, and had gotten to a board fence at the corner of a church, when she heard some one crying. She testified that she heard no gong sounded. She does not testify that she was listening or paying any attention whatever. The motorneer testified that he saw the boys come upon the track, and that he vigorously sounded the gong. We have, then, a case of positive testimony by the witness whose duty it was to sound it, and who detailed all the

circumstances, that it was sounded. We have in opposition to this two witnesses who simply testify that they did not hear it. Such testimony is worthless, even if there were no testimony that the gong was sounded. It is of a purely negative character, within the decision of *McCullough* v. *Railway Co.*, 101 Mich. 234 (59 N. W. 618). I discussed this question in *Shufelt* v. *Railroad Co.*, 96 Mich. 327 (55 N. W. 1013), and cited authorities, and to them I now refer. This case comes squarely within *Stewart* v. *Railroad Co.*, 119 Mich. 91 (77 N. W. 643), where the conductor, engineer, and fireman testified positively that the whistle was blown and the bell rung, and three witnesses for the plaintiff, who were within hearing distance, testified that they did not hear them.

I find no evidence that this train was running at an unlawful rate of speed.

Shall common carriers, doing business in the ordinary manner provided by law, be liable in damages, where boys *sui juris* harness themselves to carts, use the railroad track as a playground, and are prevented from getting out of danger by their carts' getting caught so that they cannot get beyond the reach of danger in time? I am unwilling to hold such a doctrine. I concur in what the learned circuit judge said in instructing the jury. After saying that plaintiff was an exceedingly intelligent and bright boy, nearly 15 years of age, the court said:

"This boy testified that without looking there he entered upon this track, determining for himself that because the passenger cars on that road run at half-hour intervals, jumping to the conclusion that no other car would come along there; and the testimony in this case shows that construction trains were running there at irregular intervals. He did not look to see, to go along this track; and when his brother behind him says, ' Here is a car coming,' they have even then time to get off the track. But entering upon this track in this way, for their own amusement, this boy harnessed to this little wagon for the purpose of dragging his brother along this dangerous pathway, after he had gotten off the track, or at the time the little wagon became entangled in some way on the rail, the car struck

him, and he was pulled in there.    What I am to decide is whether entering the track in this way, harnessing himself to this vehicle, dragging his little brother there, he has been guilty of contributory negligence.    I have no doubt of it whatever, and when I have no doubt it is contributory negligence it is my duty so to say."

No witness testified as to the speed of the train.    Plaintiff testified:

" *Q.* How far did the car run after you were knocked down ?

"*A.* About 30 feet past me.    *    *    *

" *Q.* Did you see the train after it stopped ?

"*A.* Yes, sir.    *    *    *    The motor end towards me was about 35 feet past me towards Mt. Clemens."

The motorman testified that the train did not run over 10 feet after it struck the cart.

This is all the testimony which can be relied upon to show a negligent rate of speed.    No negligence can be inferred.    It is a fair deduction from the testimony that the train was not running at the speed of passenger trains. A heavily-loaded train would go farther, after the application of the brakes, than one lightly loaded.    Even if the motor stopped 30 or 35 feet beyond where plaintiff was injured, this would not be evidence that the train was running at an unlawful rate of speed.    It should be supplemented either by testimony of men of experience, who can judge of the speed of trains, or by testimony showing the distance within which cars loaded as these were can stop when running at a lawful rate of speed.

The record contains no evidence of gross negligence.

LONG, J., did not sit.