DAVIS *v.* SAGINAW-BAY CITY RAILWAY CO.

1. STREET RAILWAYS—NEGLIGENCE—STREETS.

> Evidence that plaintiff, after alighting from defendant's street car, passed around the rear and was struck by a rapidly moving car coming from the opposite direction on the adjoining track, that the speed of the car was about 30 miles per hour, and that it did not stop in ap-

proaching the one from which plaintiff alighted, or give the usual signals, *held*, to show contributory negligence and not to present any issue of gross negligence which the court should have submitted to the jury.

2. SAME — PERSONAL INJURIES — COMPARATIVE NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

Comparative negligence is not recognized in this State and gross negligence does not in all cases relieve an injured plaintiff from the consequences of his negligence: but contributory negligence may not preclude recovery in a case where the defendant knew, or ought to have known, of the precedent negligence of plaintiff.

3. SAME—ALIGHTING FROM CAR—DUTY TO LOOK.

The fact that plaintiff did not look for an approaching car at a point between the tracks where he could have had a view for 1,700 feet up the street, without any obstruction, and his attention was not distracted from doing so by any passing vehicles or other perils, and nothing interfered with his progress, *held*, to bar his right to recover.

Error to Saginaw; Gage, J. Submitted January 4, 1916. (Docket No. 14.) Decided March 31, 1916.

Case by Daniel J. Davis against the Saginaw-Bay City Railway Company for personal injuries. Judgment for defendant upon a verdict directed by the court. Plaintiff brings error. Affirmed.

*Crane & Crane* (*Ernest A. Snow,* of counsel), for appellant.

*Weadock & Weadock,* for appellee.

OSTRANDER, J. The brief for appellant contains a meager statement of facts, followed by a subdivision headed "Legal Points," which is in turn followed by one headed "Argument." To the point where argument begins there is no reference to any error relied upon or to the manner in which any question involved is raised. Under the heading "Legal Points" it is said:

"It was negligence on the part of the railway company not to give due and timely warning of the approach of its cars to street intersections when a street car stopped there discharging passengers.

"It was negligence on the part of the street railway company not to maintain a constant and careful lookout ahead when a street car was stopped discharging passengers on a parallel track when the danger of collision was greatly enhanced.

"It was negligence on the part of the street railway company under section 13 of Ordinance LIII of the city of Saginaw to propel its car at a wanton and reckless rate of speed in the city as this south-bound car was propelled at a rate of speed of, to wit, 30 miles per hour.

"It was gross negligence on the part of the street railway company to propel this southbound car at great speed contrary to ordinance past an intersection where passengers were just being discharged from another car on a parallel track one block from a large factory.

"The evidence discloses no contributory negligence on the part of the appellant, and it was error to direct a verdict upon that ground."

It is needless to say that no compliance with Supreme Court Rule 40 is attempted. As has often been pointed out, obedience to the rule not only saves labor on the part of the court, but aids the court in apprehending the precise points which are involved and the appellant's contentions.

An examination of the record discloses that, plaintiff having rested his case, counsel for defendant moved the court to direct a verdict for defendant upon the ground—the sole ground—that upon the undisputed facts plaintiff was guilty of negligence contributing to his injury; that the motion was granted, a verdict returned, and judgment thereon entered. It also appears from the record and brief for appellant that, while numerous exceptions to rulings of the court were entered, some of which are made the basis for assignments of error, two principal rulings affecting the re-

sult are questioned—one the direction of a verdict upon the ground that plaintiff was himself negligent; the other the exclusion of the contention of plaintiff that testimony had been introduced or offered tending to prove the gross negligence of defendant. I say this appears, but am not entirely certain that the second point is correctly stated. A considerable portion of the brief is a criticism of the alleged nonjudicial attitude of the court during the trial and the manner and language used in the rulings made.

Assuming that the second point stated is involved, it is proper that it be first considered. It is alleged in the declaration, in negativing the asserted duties of defendant, that it wholly and wantonly failed to give any warning of the approach of the car which did the injury, and that the car was driven negligently and wantonly at an unreasonable and improper rate of speed. Further, generally, it is alleged that by the gross negligence, omission, and fault of the defendant plaintiff was struck and injured. Plaintiff preferred no requests to charge, and I am referred to no page of the record for evidence that gross negligence of defendant was relied upon. No ruling of the court upon the subject is referred to; but it appears that after hearing argument of the motion for a peremptory verdict the court took a recess until the next morning. During the recess the court prepared a memorandum of his charge, and upon the coming in of court, the jury being present, the court was interrupted by counsel for appellant as follows:

"May it please the court, before the court makes a statement, I desire to say at the adjournment of court last night the court made a request that I be prepared this morning to show the court that under the declaration filed in this case there was a charge of gross negligence.

"*The Court:* I have decided the question. If you

desired to do that you should have presented them before.

"*Mr. Lloyd Crane:* This is the first opportunity I have had.  I respectfully ask the court to show you the Michigan decisions I have here.

"*The Court:* I decline to hear you."

There was more said to the same effect, and the court proceeded with the charge.

It is alleged with a *videlicet* that the car which injured plaintiff was traveling at the rate of 35 miles an hour.  Witnesses riding on the car from which plaintiff alighted described the speed of the car which struck plaintiff in various terms, as that it whizzed past; seemed to be making up time; went at a tremendous rate.  The witness Lipinski testified in part as follows:

"*Q.* Can you give us an idea, from your experience, with having driven in automobiles, say, at 15 or 16 miles an hour, about how fast this car was going?"

The witness was riding in the car which struck plaintiff, the speed of which she was asked to estimate, and she replied:

"*A.* About 30 miles, I think, an hour."

I do not find other testimony of the speed in miles per hour.  She had testified that she had driven in automobiles and had asked and been informed as to the rate of speed they were going.  She qualified in no other way to testify as to the comparative or actual speed at which a vehicle was moving.  It was sought to show by her that she knew the motorman of the car, having traveled on his car many times during a period of four years, that in going to her work she preferred to take his car because of the speed with which he drove it, and that he drove it faster than other motormen with whom she had ridden drove their cars.  In offering some of the testimony of Miss Lipinski which was excluded the purpose was stated to be to show that the motorman on the car on which she

was riding—the car which struck the plaintiff, was incompetent. But I find no testimony admitted, or excluded, tending to prove his incompetency.

I am not prepared to hold that the declaration, considering all of its averments, does not allege gross negligence. Indeed, if the point was controlling, I should be inclined to hold that gross negligence is charged. It fairly alleges that a street car had stopped for passengers to alight, and that passengers were alighting therefrom; that upon a parallel track a car was driven at great speed, without warning of its approach, in entire disregard of the fact that passengers from the standing car, some of them, would be likely to cross the street from behind the standing car.

But the doctrine of comparative negligence does not obtain in this State, and the gross negligence of defendant, if established, does not in all cases relieve an injured plaintiff from the consequences of his own negligence. Contributory negligence of plaintiff may not prevent a recovery in a case where the defendant, who knows or ought to know of the precedent negligence of plaintiff, does him an injury. *Battishill* v. *Humphreys*, 64 Mich. 514 (38 N. W. 581) ; *Richter* v. *Harper*, 95 Mich. 221 (54 N. W. 768) ; *Borschall* v. *Railway*, 115 Mich. 473 (73 N. W. 551).

"It may be said that in such a case the negligence of the plaintiff only put him in position of danger, and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause." Cooley, Torts [1st Ed.], p. 674.

Assuming that the declaration alleges gross negligence of defendant, I find no testimony admitted, or offered and excluded, which in the view I take of the main contention required the court to submit the question of defendant's gross negligence to the jury.

The first assignment of error is based upon the rul-

ing directing a verdict for defendant. In the brief the plaintiff, appellant, recites the facts relating immediately to the injury as follows:

"As a passenger for hire the plaintiff boarded a street car on the west side of Saginaw, and was conveyed to his destination at the corner of Holden street and South Washington avenue, arriving as before stated prior to 7 o'clock on this wintry morning. Washington avenue runs north and south, and is intersected at the point where this accident took place by Holden street, running east and west. The defendant company owns and operates parallel tracks on Washington avenue; north-bound cars using the easterly tracks, and south-bound cars the westerly tracks. The car upon which the appellant was riding was a north-bound car, and therefore upon the easterly tracks, and upon signal stopped upon the north side of the street intersection to allow the appellant and another passenger to alight. The car was stopped on a line with the sidewalk at this point, and the appellant allowed a lady to alight ahead of him, and then he alighted. The cars operated by the defendant company during the winter season were the large inclosed cars that projected over the rails about 18 inches on either side. After the appellant had alighted he stepped back about 2½ feet away from the car to the east and allowed it to pull out and proceed north in the neighborhood of 30 feet before moving. The Bartlett Foundry was located to the west one block, and, as this was his first morning going to work there, he stopped before crossing the tracks and looked north for an approaching car, and then to the south for any vehicles or automobiles. Seeing no danger, he started to cross the easterly track and proceed slowly, and again looked north, and saw only the rear of the car he had left, and this he estimated was probably 55 feet from where he stood. The way was seemingly clear, and he proceeded toward the westerly track, and when he had taken only a few steps from where he stopped to look, and while he had not reached the westerly track, and was still between the tracks, he was struck by a south-bound car going at a terrific speed, and which sounded no warning whatsoever. The impact of the collision was received upon

the right side of his head and body, and he was struck by the projecting portion of the car and thrown forward and to the east, and only in this way escaped being ground to death under the car."

In argument it is said:

"We contend *first* that a street car company does not acquire by its conferred franchise a servitude or right to priority of way upon the highway as does an ordinary freight or passenger railroad company by gift, transfer for consideration, or condemnation as to land over which it runs its tracks. A street car and a pedestrian have equal rights of the same kind to the concurrent use of the city streets. *Bremer* v. *Railway Co.*, 107 Minn. 326 (120 N. W. 382, 21 L. R. A. [N. S.] 887), and cases there cited.

"We contend *secondly* that it is not contributory negligence as a matter of law for a discharged passenger to attempt to cross a parallel track when he has looked and his view is obstructed by the projecting back of a retreating car, and when it is conceded the motorman was propelling the car by which he was struck at a reckless speed, and did not give the accustomed signals.

"We contend *thirdly* that upon the following conceded facts: (1) The car striking plaintiff was running at excessive speed, to wit, 30 miles per hour; (2) no warning or signals were given to acquaint plaintiff of the on-coming car; (3) the car had such impetus that it went over 200 feet after striking the plaintiff before it could be stopped; (4) the plaintiff waited until the car he had left had gone north about 30 feet, and looked both ways before attempting to cross the parallel tracks; (5) the plaintiff was struck before he reached the westerly tracks, that is, while he was between the tracks—it was error for the trial court to direct a verdict for the defendant."

It is not *conceded* that the motorman was propelling the car at a reckless speed and did not give customary signals, but there was testimony tending to prove, as I have shown, a considerable rate of speed, and that no signals were given. There are, too, many important facts which were testified to, not embraced in the state-

ment made by the plaintiff. At the point where plaintiff alighted and for a considerable distance in each direction Washington street is 100 feet wide, and 40 feet of the width are paved. Plaintiff was 30 years old, in health, with unimpaired hearing and vision. He was reasonably familiar with the surroundings, knew of the double tracks and the use which was constantly made of them. There were neither vehicles nor people interfering with his progress nor demanding his attention. Except as the car from which he alighted interfered with observation, the view to the north was unobstructed. He could have seen a car 1,700 feet away. It follows necessarily that he did not look for an approaching car at all, or, if he looked, it was from a point where his view was obstructed by the car from which he alighted. Whatever the legal consequences may be, what plaintiff did not do is put beyond question by the undisputed physical facts. He did not look to the north for an approaching car from a place where his view was for any considerable distance unobstructed by the north-bound car from which he alighted. If he had done so, he would have seen the approaching car. In the line of his progress to the west, and while he was in a place of safety, he would have seen the approaching car if he had looked for it. The case must be considered as though plaintiff had testified that, if he had looked from the space between the rails, and while he was in a place of safety, he could and would have seen the on-coming car, and did not look. Under the circumstances, what did ordinary care for his personal safety demand of him?

That passengers alighting from street cars often pass to the rear of the cars and cross the street is a circumstance, a fact, affecting the conduct of those using the street with vehicles. The view of persons alighting from the car and the view of drivers of vehicles approaching from the direction in which the car

is moving are alike interfered with for a time by the standing or moving car. Drivers of street cars, traveling in the same street, in opposite directions, on parallel lines of track, cannot, in prudence, ignore the fact that they are approaching a car from which passengers are alighting. But the duties arising from the circumstances are reciprocal. The alighting passenger, desiring to cross the street, owes the duty to exercise reasonable vigilance for his own safety. He knows that an approaching car cannot turn out for him; that it is heavy and cannot be instantly stopped. He knows that until he is in a position to see an on-coming car he cannot be observed by its driver. He can in an instant put himself in a position where the sharpest lookout and most careful management will not save him. In my opinion, the case is ruled by *Clark* v. *Railway*, 168 Mich. 457 (134 N. W. 463).

The judgment is affirmed.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.