### BLATNIKOFF *v.* DETROIT UNITED RAILWAY.

STREET RAILWAYS—PERSONAL INJURIES—LAST CLEAR CHANCE—DISCOVERED NEGLIGENCE—DIRECTED VERDICT.

   In an action against a street railway company for personal injuries, a verdict for defendant was properly directed, where plaintiff, who was a passenger on a south-bound car, passed around the end of the car and started diagonally across the other track, when he was struck by a

See notes in 55 L. R. A. 418; 36 L. R. A. (N. S.) 957.

north-bound car; plaintiff's contributory negligence being conceded, and the rule of subsequent, or discovered, negligence having no application, since it was not manifest that he was in a position of peril which the motorman could and should have discovered in time to avoid the injury.

Error to Wayne; Hosmer, J. Submitted April 18, 1918. (Docket No. 131.) Decided June 3, 1918.

Case by Samuel Blatnikoff against the Detroit United Railway for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Fitz-Gerald & Ring*, for appellant.

*Corliss, Leete & Moody* and *Benjamin S. Pagel*, for appellee.

STEERE, J. On the morning of May 11, 1914, plaintiff alighted from the rear exit of one of defendant's south-bound street cars on Woodward avenue at a point north of its intersection with Larned street, in the city of Detroit, and, walking immediately eastward at the rear of that car upon the closely adjacent parallel track, was struck by a passing north-bound car. The car threw him to one side and its wheels did not run over him, but in the accident he suffered an open wound upon his knee which became infected, resulting in abscesses and stiffening of the joint. His physician testified this condition was permanent and describes it as follows:

"The anchylosed condition or solidifying of the knee joint is due to infection; that is, after the injury had happened some other germs got into it and set up an infection and this is the result."

On trial of this action, which was brought in the circuit court of Wayne county to recover damages for such injury, it was the opinion of the presiding judge

that actionable negligence was not shown, and a verdict of no cause of action was directed on defendant's motion at the conclusion of plaintiff's testimony. After denial of a motion by plaintiff for a new trial he removed the case to this court for review on numerous assignments of error.

It is here admitted in the brief of plaintiff's counsel that "there is no question but what plaintiff was guilty of contributory negligence in walking to the rear of the car from which he alighted," and said that all assignments of error center upon the single contention that there was evidence of "subsequent negligence" on the part of defendant, owing to the failure of the motorman to promptly check his car on discovery of plaintiff's peril, which should have been submitted to the jury.

Woodward avenue is the principal and most congested thoroughfare in Detroit, extending centrally through it north from the Detroit river with a double street car line along it into which various other car lines lead and center. The accident occurred in the down town business district between Congress and Larned streets, which run east and west crossing Woodward one block apart, of which plaintiff's witness Meade testified:

"It is a short block. This happened near the southerly end of the block; it is about 30 to 50 feet nearer the southern than the north end. * * * There was a car coming down there in the morning every few minutes. There were many cars going up and down— Woodward, Hamilton, interurbans and Brush."

Plaintiff was a cap maker by trade, about 56 years of age, active and able-bodied, his hearing and eyesight good, and, as he stated, "a fast walker." At the time of the accident he was going to his place of employment. The nearest stopping place of street cars to the building in which he was employed was at the

Woodward avenue and Larned street crossing. He had worked in this building for several years and was familiar with the locality, activities and condition of traffic at that point. The only witness to the accident besides himself was a young man named Lawrence Meade, employed in a clothing and haberdasher establishment four doors north of the corner of Larned on the east side of Woodward avenue, who was out sweeping the sidewalk in front of the store and just at that time happened to be leaning upon his broom facing southerly and watching the passing traffic, his position being north of the rear of the car from which plaintiff alighted. He testified that he noticed the north-bound car which struck plaintiff approaching on the easterly track as it was crossing Larned street, where it did not stop, and observed that after passing the crossing its speed was increased and he also saw plaintiff come out from behind a car which was standing back of another car on the other track, walking easterly as though about to cross that upon which the approaching car was coming, and thought he was liable to be hit by it if he was not careful. He estimated the car was then going approximately 15 miles an hour and was about 50 feet from plaintiff as he came out from behind the other car, saying: "and he continued to cross until the car hit him." He did not remember what part of the car struck plaintiff, but the wheels did not go over him and he rolled about 15 feet with his head to the westward, and the car stopped about within its own length after it struck him; that he could not tell how many steps plaintiff took after he passed the rear of the car he had left nor whether or not he was looking at the approaching car, but as he came out from the rear of the south-bound standing car and went easterly onto the track of the on-coming north-bound car he was walking at an angle towards it.

It was conceded upon the trial that the car tracks on Woodward avenue are 4 feet, 8½ inches wide, and the space between the two tracks, called the "devil-strip" was about five feet wide. In alighting from his south-bound car on the west track, from its right or west rear exit and passing behind it to reach the east side of the avenue plaintiff was hid by the car he left from the approaching north-bound car on the other track, and it from him, until he had passed the overhang of his car on the five feet wide devil-strip. His general description of the accident and attending circumstances runs in one portion of his testimony as follows:

"I did not walk around without stopping, I had to stop to turn around to go back of the platform. After I started to walk around the car, I did not stop, I walked straight on to pass over the track and was walking until I was struck. I do not know whether I was walking three or four miles an hour or not, as I have never timed myself to see how fast I walked. I was walking quite fast as I am a fast walker, and was walking fast from the time that I got off the car until I was struck. * * * I passed over the first car track and passed over the strip between the north and south-bound tracks and onto the other track and just as I got on the other track I was struck. I do not remember whether I was thrown down as I was struck. When I first saw the car that struck me I was between the north and south-bound tracks." * * *

In justification of his own conduct, now urged as proof of subsequent negligence on the part of defendant, he also testified that when he passed around back of the car from which he alighted to the "empty space," or devil-strip between the two tracks, he "looked around up and down Woodward avenue to see if anything was coming" and saw the car which struck him coming from the south in the middle of the block beyond Larned street close to the Avenue Theater, and, expecting it would stop at the other corner of that

street, thought "I can pass in the same time," saying further, "I started to walk as soon as I thought to myself he has got to stop the other side corner, * * * I kept my eye on the car" which did not stop at the corner but "she went medium at first and after that she came to the corner she started quicker," and

"At the last track she catched me.

"Q. All the time you were walking fast—all the time you were looking at the car it was running?

"A. Yes, sir. * * *

"Q. Did you look, or did you see the car just as you stepped over the first rail of the north-bound track?

"A. Yes, sir.

"Q. How far was it away from you then?

"A. Well, I think it was between—of course I could not tell you exactly but about 75 or 80 feet—between 75 and 80 feet."

Asked how many steps he took from the time he saw the car (which was after he came upon the devil-strip walking fast) until he was struck, he replied, "I don't remember exactly whether I took five, or may be took one, I don't remember exactly."

It is evident this line of excusing testimony cannot be reconciled with plaintiff's other more reasonable and probable repeated statements, that he "walked straight on to pass over the track," did not see the car until he was in "the middle, or empty space," within not over two steps of the other track, and was walking fast from the time he got off his car until he was struck. Unless he walked down the track to meet it with suicidal intent, it is inconceivable that he was struck by an oncoming car he had first seen upon this track near the middle of the next block south, beyond Larned street crossing, which he kept his eye on and noted was approaching the crossing where he expected it to stop at a medium rate, but after passing that crossing increased its speed as it bore down upon him.

He could see the car as soon as its motorman could see him, says he saw it was coming towards him, did not turn his head away and asserts "I kept my eye on the car, certainly."

Plaintiff was an adult, familiar with the location and condition of traffic there, in full possession of his faculties and is not shown to have been confused or his attention distracted by any other passing cars or vehicles or apparent dangers. Meade testified that his course as he came out from behind the standing car was at an angle towards the one which struck him. His appearance to the motorman near the track, or even crossing it, if sufficient distance away to easily step aside, would not in itself be a warning that he was in peril. Until it became manifest that he did not see the approaching car or in some manner was apparent from his conduct that he was in a position of peril which the motorman could and should have discovered in time to avoid the injury, the rule of subsequent, or discovered, negligence has no application. It is not shown the car was running at an unlawful or excessive rate of speed. It was between crossings approaching the center of the block and was stopped within its length after the accident.

Of a similar accident where the car was claimed to be running at 30 miles an hour, it was said:

"But the duties arising from the circumstances are reciprocal. The alighting passenger, desiring to cross the street, owes the duty to exercise reasonable vigilance for his own safety. He knows that an approaching car cannot turn out for him; that it is heavy and cannot be instantly stopped. He knows that until he is in a position to see an on-coming car he cannot be observed by its driver. He can in an instant put himself in a position where the sharpest lookout and most careful management will not save him." *Davis* v. *Railway Co.*, 191 Mich. 131.

Under the most favorable view of plaintiff's testi-

mony, as an entirety, we are well satisfied this case is analogous to and in principle controlled by *Doty* v. *Railway Co.*, 129 Mich. 464; *Clark* v. *Railway*, 168 Mich. 457; *Davis* v. *Railway Co., supra*, and the cases there cited.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, and STONE, JJ., concurred with STEERE, J. KUHN, J., concurred in the result.