# EMMELINE D. KIMPELL v. DULUTH STREET RAILWAY COMPANY.[1]

January 21, 1927.

No. 25,678.

**Error to dismiss case where facts were sufficient to support finding that street railway company was negligent.**

In an action arising out of alleged negligence causing a collision between a street car and an automobile, *held* upon the facts stated in the opinion that the evidence was sufficient to support a finding that the street railway company was guilty of negligence.

Street Railroads, 36 Cyc. p. 1618 n. 7.

[1]Reported in 211 N. W. 955.

Defendant appealed from an order of the district court for St. Louis county, Fesler, J., granting plaintiff's motion for a new trial. Affirmed.

*G. A. E. Finlayson,* for appellant.

*W. A. Pittenger* and *Leslie S. High,* for respondent.

WILSON, C. J.

Defendant appealed from an order granting a new trial based exclusively upon errors occurring at the trial. It was claimed that the error consisted of an order of the court dismissing the action at the close of plaintiff's evidence.

Plaintiff seeks to recover damages because of the death of her son who was killed in the automobile collision involved in Kimpell v. Duluth St. Ry. Co. 167 Minn. 144, 208 N. W. 759. The automobile was traveling south on the westerly side of Tower avenue in Superior, Wisconsin, about 8:30 in the evening of August 21, 1924. A street car coming from the south collided with it. Tower avenue has but a single line of railway track located on the west side of the center of the street. There is a narrow paved driveway on both sides of the avenue and a two-foot ditch along the west side. The automobile driver was not familiar with this avenue. There was a heavy fog. Another driver experienced difficulty in keeping on the pavement because of the fog. Others drove slowly and the headlights penetrated only to a point about 15 feet ahead. Mist on the windshield necessitated its being opened to see ahead. Presumably it had a similar effect upon the windows of the street car. The automobile was traveling about 12 miles per hour. Its left front end apparently came in contact with the left front end of the street car. It seems fair to infer that at the time of the collision the left wheels of the automobile were almost upon the west rail though immediately before the accident the driver was attempting to make a right turn. The collision punctured the wall of the street car and broke several of its windows. The west side of the street car fender was badly bent. Immediately after the accident both vehicles were facing north. There was broken glass on the ground five to eight feet south

of the automobile which was about 40 to 45 feet south of the street car. A curtain from the automobile was on the ground 50 to 75 feet north of the automobile. The five occupants of the automobile were thrown some distance. Plaintiff was south of the automobile. Two were killed and two injured. The automobile was wrecked. The jury may infer that the collision occurred at the place where the glass was on the ground; that the street car threw the automobile back five to eight feet, carried the curtain to its location, and came to a stop 80 to 100 feet north of the point of collision. Defendant admits in its answer that at the time of the collision it was running the street car "in the usual way and at the usual rate of speed for that locality." There is no direct testimony as to the actual speed of the street car. At the scene of the accident the motorman said to a police sergeant: "It was pretty foggy; I could not see the car until I was right on to it."

The automobile driver was a stranger on the road. We have the unusual procedure of the street car traveling on the left side of the road but presumably with authority. There was not much of a dirt shoulder between the pavement and the ditch. The west rail was about two feet from the paving. These physical conditions which were known to the motorman emphasized his duty which was already increased by reason of the fog. Weather conditions often demand increased vigilance or caution by those who use public highways not only for their own but also for the safety of others. This duty forbids traveling at the "usual rate of speed." Engelman v. Metropolitan St. Ry. Co. 133 Mo. App. 514, 113 S. W. 700; Fisher v. Union Ry. Co. 86 App. Div. 365, 83 N. Y. S. 694; Kakunis v. Ogden Rapid Transit Co. 63 Utah, 4, 221 Pac. 853. The distance the street car traveled after the collision calls for explanation. It is a circumstance, when unexplained, indicative of speed. Quirk v. Rapid Ry. 130 Mich. 654, 90 N. W. 673; Wilhelm v. Public Service Ry. Co. 95 N. J. L. 505, 113 Atl. 239. Until a satisfactory explanation is made by a defendant in possession of the facts, it is a persuasive circumstance in support of a prima facie case.

The location of the track, the fog, the probable necessity for traveling slower than the "usual rate of speed" at which defendant was admittedly traveling, the circumstances and consequences of the collision and the inferences that may be drawn therefrom are sufficient to support a finding by the jury that defendant was guilty of negligence. The action should not have been dismissed.

Affirmed.